**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **KARYA PROPERTY MANAGEMENT, LLC,** | § § § | |
| **Plaintiff,** | § § | **Civil No. 2:20-CV-00134** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **RESMAN, LLC,** | § § | |
| **Defendant.** | § | |

## DEFENDANT RESMAN, LLC'S ANSWER AND COUNTERCLAIM

Defendant ResMan, LLC ("ResMan") files its Answer to the Complaint for Patent Infringement and files its Counterclaim.

## NATURE OF THE ACTION[1]

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, specifically including 35 U.S.C. § 271.

**ANSWER:**    ResMan admits that the Complaint purports to state an action arising under the patent laws of the United States.  ResMan denies the legal sufficiency of Plaintiff's claims against ResMan, denies that Plaintiff has any viable claim for patent infringement against ResMan, and otherwise denies the allegations of Paragraph 1.

## THE PARTIES

2.      Plaintiff Karya Property Management, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 8901 Gaylord Dr., Ste. 100, Houston, TX 77024.  It provides multifamily management services

---

[1] The headings in the Complaint for Patent Infringement are reproduced herein for the convenience of the Court.  To the extent such headings include or infer allegations, they are denied.

for apartments across the United States.

**ANSWER:**   ResMan lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

3.   On information and belief, Defendant ResMan, LLC is a property management software company organized under the laws of the State of Utah and is authorized to do business in Texas.  ResMan has a principal place of business at 2901 Dallas Parkway, Suite 200, Plano, TX 75093.  On information and belief, ResMan offers its products and services to property management companies and regularly conducts business in the Eastern District of Texas.

**ANSWER:**   ResMan admits it is a property management software company organized under the laws of the State of Utah, which is authorized to do business in Texas, has a principal place of business at 2901 Dallas Parkway, Suite 200, Plano, TX 75093, and conducts business in the District.  ResMan further admits that it offers its products and services to property management companies and regularly conducts business in the Eastern District of Texas, but otherwise denies the allegations of Paragraph 3.

## JURISDICTION AND VENUE

4.   Karya asserts a claim for patent infringement against ResMan arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**   ResMan admits that the Complaint purports to state an action arising under the patent laws of the United States.  ResMan denies the legal sufficiency of Plaintiff's claims against ResMan, denies that Plaintiff has any viable claim for patent infringement against ResMan, and otherwise denies the allegations of Paragraph 4.

5.   This Court has personal jurisdiction over ResMan for at least the following reasons: (1) ResMan has a regular and established place of business in this District, including at

2901 Dallas Parkway, Suite 200, Plano, TX 75093; (2) on information and belief, ResMan has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (3) on information and belief, ResMan regularly does business or solicits business in this District; (4) on information and belief, ResMan engages in other persistent courses of conduct and derives substantial revenue by offering and providing infringing products and services in this District; and (5) on information and belief, ResMan has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be hauled into court here by its offering and providing of infringing products and services in this District.

**ANSWER:**    For purposes of this action, ResMan does not contest personal jurisdiction and admits that it has a regular and established place of business in this District and conducts business in this District, but denies it has committed, contributed to, or induced, acts of infringement in this District and otherwise denies the remaining allegations of Paragraph 5.

6.    Venue is proper in the Eastern District of Texas under at least 28 U.S.C. §§ 1391(b), (c) and/or 1400(b).  On information and belief, ResMan has a regular and established place of business in the Eastern District of Texas at 2901 Dallas Parkway, Suite 200, Plano, TX 75093.  Additionally, the acts and transactions constituting the violations alleged herein occurred in this judicial district and ResMan transacts business in this judicial district.

**ANSWER:**    ResMan admits that venue is proper in this District and that it has a regular and established place of business in this District, but denies it has committed, or continues to commit, acts of infringement in this District and otherwise denies the remaining allegations of Paragraph 6.

## THE PATENTED TECHNOLOGY

7.        U.S. Patent No. 7,636,687 B2 (the "'687 Patent"), titled "Method And System For Completing A Lease For Real Property In An On-Line Computing Environment," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 22, 2009, to the listed inventors Paul Foster and Richard Warshauer. *See* Exhibit A. The '687 Patent relates to novel computing systems and computer-implemented methods for facilitating leasing transactions for real property. *Id*. In particular, the inventions described and claimed in the '687 Patent provide an online computing environment for lease transactions in the commercial real estate field by using a distributed computer network to support communication, negotiation, and transaction tasks conducted by brokers, property owners, tenants, and their advisors. *Id*. The inventors assigned their interest in the claimed inventions to General Electric Capital Corporation on January 22, 2001.

**ANSWER:**    ResMan admits that, on its face, the '687 Patent is titled "Method and System For Completing A Lease For Real Property In An On-Line Computing Environment," has an issue date of December 22, 2009, and lists Paul Foster and Richard Warshauer as inventors. ResMan also admits that USPTO PAIR lists an assignment from Paul Foster and Richard Warshauer to General Electric Capital Corporation recorded January 22, 2001, but otherwise denies the allegations of Paragraph 7.

8.        Karya is a privately held full-service multifamily management company that focuses on providing property management services. Karya's goal is to ensure that managed properties are optimized in every aspect from marketing, tenant satisfaction and retention, expense management, revenue optimization, and overall management to yield maximum levels of net operating income, while providing its clients with the highest levels of transparency, control, and

integrity.  To that end, Karya acquired the '687 Patent on April 15, 2020 from GE Capital US Holdings, Inc., and recorded the assignment of the '687 Patent with the United States Patent and Trademark Office on April 22, 2020.  *See* Exhibit B.  Karya owns all right, title, and interest in the '687 Patent, including the right to enforce '687 Patent and to recover for past infringement of the '687 Patent.

**ANSWER:**   ResMan admits that USPTO PAIR lists an assignment from GE Capital US Holdings, Inc. to Karya Property Management recorded April 22, 2020.  ResMan lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8 and, therefore, denies the same.

9.      The '687 Patent, with a provisional application filed November 20, 2000 (Provisional Application No. 60/252,285), describes the technical limitations that negatively impacted existing tools as well as how the claimed inventions improve upon prior systems.  For instance, the patent describes that prior to the claimed inventions, at least one company offered a Web site that listed commercial real estate lease opportunities and was accessible to commercial real estate brokers.  *See* Ex. A, 1:38-41.  The motivation for such a Web site was "[t]o expand the typical broker's network of relationships and to increase the number of potential property representations." *Id*.  The '687 Patent, however, recognized that "[a]lthough this Web site facilitates the matching of a tenant's property requirements with available properties, the Web site does not support the negotiation closing [sic] of a lease transaction in an on-line electronic environment." *Id*., 1:42-44.  The '687 Patent recognized that "this results in an inefficient allocation of resources to complete a lease transaction . . . ." *Id*., 1:49-50.

**ANSWER:**   ResMan admits the '687 Patent claims priority from Provisional Application Serial No. 60/252,285.  ResMan further admits the '687 Patent asserts at least one

company offered a Web site that listed commercial real estate lease opportunities and was accessible by brokers.  ResMan lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and, therefore, denies the same.

10.     The then-existing solutions suffered from additional deficiencies.  For instance, limitations of existing systems constrained users to locally available content and related property data.  *See id.*, 6:65-7:13.  As a result, users often did not have access to the latest, broadest set of relevant property data, which, for example, made the selection of relevant comparable values more difficult for users.

**ANSWER:**    ResMan admits the '687 Patent asserts users are no longer constrained from reaching a decision about a real estate transaction based only upon locally available information.  ResMan denies the accuracy of the statement and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and, therefore, denies the same.

11.     Thus, the '687 Patent purportedly recognized "a need in the art for an on-line solution that addresses the primary tasks completed in a typical lease transaction, including the identification of a property matching a potential tenant's requirements, site visit and space calculations, lease term negotiations, and lease execution." *Id.*, 1:53-58.

**ANSWER:**    ResMan admits the '687 Patent recites, "a need in the art for an on-line solution that addresses the primary tasks completed in a typical lease transaction, including the identification of a property matching a potential tenant's requirements, site visit and space calculations, lease term negotiations, and lease execution," but denies the accuracy of the statement.

12.     The claimed systems and methods of the '687 Patent are directed to subject matter

that is rooted in technology and disclose solutions to technological problems in the field of commercial real estate leasing transactions.  For example, to address the above-described problems and provide additional advancements in the field, the '687 Patent describes a novel online property management environment comprising a distributed computer network coupled to client computers, a property services server platform connected to a local database, and property information databases.  *See id.*, 2:3-7.  Figure 1 of the '687 Patent, reproduced below, illustrates one example embodiment of such a system.



*Fig. 1*

**ANSWER:**   ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by the claims of the '687 Patent, in the event any valid and enforceable claims exist, but otherwise denies the allegations of Paragraph 12.

13.      As can be seen above, the example embodiment of Figure 1 depicts a novel online property management environment 100 that comprises a distributed computer network 105 coupled to clients 110-140, a property services server platform 145 connected to a local database

150, and property information databases 155-165.  *See id*., 4:40-45.  In the example embodiment depicted in Figure 1, the property services server platform 145 provides real estate industry services, including content, decision support tools, transaction exchanges, and access to key members of the real estate community and its service providers.  *See id*., 4:59-62.  Client computers 110 and 115 represent users of property services hosted by the property services server platform 145 (e.g., tenants and property owners).  *See id*., 4:45-48.  Client computers 120-140 represent service providers for servicing the activities of users in the property management field (e.g., lenders, site visit agents, engineering, appraisal and environmental specialists, deal agents, and call center agents).  *See id*., 4:54-58.

**ANSWER:**    ResMan admits Figure 1 of the '687 Patent is purportedly a block diagram illustrating the primary components of an on-line operating environment for leasing transactions, as described in the '687 Patent, the scope of which is defined by any valid and enforceable claims, but otherwise denies the allegations of Paragraph 13.

14.    The claimed systems and apparatuses embody inventive concepts that are patent-eligible, providing significant improvements over the prior art and enabling non-conventional combinations of features not present in the prior art.  For example, a principal object and advantage of the claimed inventions is to provide an improved user interface for facilitating commercial real estate lease transactions.  As detailed in the '687 Patent, existing systems merely listed commercial real estate lease opportunities on a website but did not support other functionality that the inventors of the '687 Patent recognized would be desirable.  *See supra*, ¶¶ 9-11.  The property services server platform described and claimed in the '687 Patent improves upon prior user interfaces by "operat[ing] as a Portal" and thereby "providing a central Web site for a consumer's real estate-related operations."  *Id*., 7:64-66.

**ANSWER:**     Paragraph 14 contains legal conclusions to which a response is not required. To the extent a response is required, ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the remaining allegations of Paragraph 14.

15.     Specifically, the property services server platform improves upon prior user interfaces by "aggregat[ing] a variety of real estate-related tools and services at a single Web site accessible by consumers, service providers and agents via client computers." *Id.*, 7:66-8:3.   For example, in certain embodiments the property services server platform 145 offers consumers the opportunity to use a single Web site to conveniently complete due diligence activities for a real estate transaction, to analyze market aspects of the transaction, to finance the transaction and to access service providers in support of the transaction. *See id.*, 8:3-8.  The property services server platform delivers "software applications or tools to users operating various clients," which "allows a client running a Web browser to connect via the distributed computer network to the property services server platform and to access a variety of real estate-related applications and to manipulate and store real estate data. *See id.*, 7:16-23.  The applications that can be operated by the property services server platform include, for example, budgeting, financing, forecasting, and valuation tools for the real estate industry. *See id.*, 7:23-25.  Additionally, the property services server platform provides a "central location in an on-line computing environment for reviewing a consumer's real estate activities, current real estate news and research, and relevant property and stock market information." *Id.*, 8:12-15.

**ANSWER:**     ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any

9

valid and enforceable claims of the '687 Patent, but otherwise denies the remaining allegations of Paragraph 15.

16.      Thus, the property services server platform improves upon prior user interfaces by "provid[ing] real estate industry services, including content, decision support tools, transaction exchanges, and access to key members of the real estate community and its service providers" in the form of "a convenient on-line forum for connecting a variety of property specialists to the potential users of those services." *Id.*, 2:11-15, 5:50-52. This aspect of the claimed inventions was not well-understood, routine, or conventional at the time of the invention of the '687 Patent. To the contrary, the '687 Patent acknowledges that existing tools merely listed commercial real estate opportunities on a Web site and did not support the functionality necessary to negotiate and close a lease transaction. *See id.*, 1:38-45.

**ANSWER:**      ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the remaining allegations of Paragraph 16.

17.      This inventive aspect described in the '687 Patent is captured in the claims. For instance, Claim 1 recites "[a] computing system for enabling a lease transaction for real property" comprising "a property management services server hosting a leasing software module for enabling the lease transaction." *Id.*, 15:25-30. Consistent with the description in the specification, "a plurality of client computers [are] coupled to said property management services server." *Id.*, 15:34-35. The claimed system enables an owner and a tenant to "input predetermined information about a selected real estate property into said leasing software module and negotiate an electronic term sheet using said leasing software module." *Id.*, 15:38-41. The claimed leasing software

module of the property management services server "accesses the property-related data . . . to obtain data relevant to the selected real estate property, populates a lease agreement based on predetermined information from an owner of the selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant." *Id.*, 15:43-51.

**ANSWER:** ResMan admits Claim 1 of the '687 Patent recites, "[a] computing system for enabling a lease transaction for real property" comprising "a property management services server hosting a leasing software module for enabling the lease transaction," "a plurality of client computers coupled to said property management services server," "input predetermined information about a selected real estate property into said leasing software module and negotiate an electronic term sheet using said leasing software module," "accesses the property-related data . . . to obtain data relevant to the selected real estate property, populates a lease agreement based on predetermined information from an owner of the selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant," but denies the validity of Claim 1 and otherwise denies the remaining allegations of Paragraph 17.

18.     Dependent Claim 2, which depends from Claim 1, further specifies that the claimed client computers include one or more of: "a lender client computer operable by a lender to support property financing requirements for the selected real estate property; a site visit agent client computer operable by a site visit agent to support on-site property review and analysis of the selected real estate property; a property specialist client computer operable by a property specialist to provide property-related expertise in a connection with the selected real estate property; and a deal agent client computer operable by a deal agent to screen, negotiate, and close property-related

transactions in connection with the selected real estate property." *Id.*, 15:52-65.

**ANSWER:**    ResMan admits Claim 2 of the '687 Patent recites, "a lender client computer operable by a lender to support property financing requirements for the selected real estate property; a site visit agent client computer operable by a site visit agent to support on-site property review and analysis of the selected real estate property; a property specialist client computer operable by a property specialist to provide property-related expertise in a connection with the selected real estate property; and a deal agent client computer operable by a deal agent to screen, negotiate, and close property-related transactions in connection with the selected real estate property," but denies the validity of Claim 2 and otherwise denies the remaining allegations of Paragraph 18.

19.       Similarly, Claim 10 recites a computer implemented method for conducting a lease transaction for real estate property in a distributed computer network environment.  The claimed method requires a number of steps that are performed "using a software module operating on a property services server." *Id.*, 16:45-46.  In addition to identifying and publishing a matching property, the claimed method "stor[es] . . . an electronic term sheet negotiated by the owner and tenant using the software module operating on the property services server," "creat[es] a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the terms of the electronic term sheet into a form lease agreement," and "publishes the created lease agreement for review by the tenant and the owner." *Id.*, 16:47-63. Dependent Claims 11-16, which depend from Claim 10, recite further innovative features of the claimed method.  *Id.*, 16:64-17:35.

**ANSWER:**    ResMan admits Claim 10 of the '687 Patent recites, "using a software module operating on a property services server," "storing . . . an electronic term sheet negotiated

by the owner and tenant using the software module operating on the property services server," "creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the terms of the electronic term sheet into a form lease agreement," and "publishing the created lease agreement for review by the tenant and the owner," but denies the validity of Claim 10, and claims dependent thereon, and otherwise denies the remaining allegations of Paragraph 19.

20.      Similarly, Claim 17 recites "[a] system for enabling a lease transaction for real property in an on-line computing environment." *Id.*, 17:36-37.  The claimed system comprises "a property management services server, coupled to a distributed computer network, hosting a leasing software module for enabling the lease transaction" and "a plurality of remote databases, coupled to said property management services server, each storing real estate property-related data[.]" *Id.*, 17:38-46.  In addition to "identif[ying] a matching property," the claimed leasing software module hosted by the property management services server "stores an electronic term sheet negotiated by an owner of the matching property and the tenant using the leasing software module" and "populates a lease agreement based on the owner property characteristics and the negotiated electronic term sheet." *Id.*, 17:53-18:13.  Dependent Claim 19, which depends from Claim 17, further specifies that the claimed client computers include "at least one of: a lender client computer operable by a lender to support property financing requirements for the matching property; a site visit agent client computer operable by a site visit agent to support on-site property review and analysis of the matching property; a property specialist client computer operably by a property specialist to provide property-related expertise in connection with the matching property; and a deal agent client computer operable by a deal agent to support screening, negotiating, and closing property related transactions[.]" *Id.*, 18:20-34.

**ANSWER:**     ResMan admits Claim 17 of the '687 Patent recites, "[a] system for enabling a lease transaction for real property in an on-line computing environment," "a property management services server, coupled to a distributed computer network, hosting a leasing software module for enabling the lease transaction," "a plurality of remote databases, coupled to said property management services server, each storing real estate property-related data," and "identif[ying] a matching property," but denies the validity of Claim 17, and claims dependent thereon.  ResMan further admits Claim 19 of the '687 Patent recites that client computers include "at least one of: a lender client computer operable by a lender to support property financing requirements for the matching property; a site visit agent client computer operable by a site visit agent to support on-site property review and analysis of the matching property; a property specialist client computer operably by a property specialist to provide property-related expertise in connection with the matching property; and a deal agent client computer operable by a deal agent to support screening, negotiating, and closing property related transactions," but denies the validity of Claim 19.  ResMan otherwise denies the remaining allegations of Paragraph 20.

21.     The claim limitations discussed above capture the inventive solution providing an improved user interface for facilitating commercial real estate lease transactions described in the '687 Patent.

**ANSWER:**     ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the remaining allegations of Paragraph 21.

22.     Another principal object and advantage of the claimed inventions is to solve the technical problems arising due to limitations of local databases.  One way the claimed inventions

solve this problem is by enabling a user to access information relevant to a real estate transaction in databases maintained at remote geographical sites.  *See id.*, 7:3-7.  The '687 Patent explains that "[a]lthough the property services platform server 145 can access content and related property data from a local database 150, it will be appreciated that the distributed nature of the computing environment shown in FIG. 1 also supports retrieval of such information from remote data sources, such as property databases 155, 160 and 165." *Id.*, 6:65-7:3.  The "distributed computer network" advantageously "enable[s] a user to access multiple databases and to obtain comparables data related to a property of interest for use in calculations," which in turn "enable[s] users to access the latest, broadest set of relevant property data and to select relevant comparable values quickly and with minimal manual intervention." *Id.*, 1:64-2:3.

**ANSWER:**   ResMan admits the '687 Patent asserts that "[a]lthough the property services platform server 145 can access content and related property data from a local database 150, it will be appreciated that the distributed nature of the computing environment shown in FIG. 1 also supports retrieval of such information from remote data sources, such as property databases 155, 160 and 165," and the "distributed computer network" "enable[s] a user to access multiple databases and to obtain comparables data related to a property of interest for use in calculations," which "enable[s] users to access the latest, broadest set of relevant property data and to select relevant comparable values quickly and with minimal manual intervention," but denies the accuracy of these statements and otherwise denies the allegations of Paragraph 22.

23.     This aspect of the claimed inventions was not well-understood, routine, or conventional at the time of the invention of the '687 Patent.  With existing approaches, users were forced to rely on locally available information, such as the property information maintained at the user's desktop computer.  *See id.*, 7:9-10.  In contrast, using the systems and methods described

and claimed in the '687 Patent, "users are no longer constrained from reaching a decision about a real estate transaction based only upon locally available information[.]" *Id.*, 7:7-10.

**ANSWER:**   ResMan admits the '687 Patent asserts, "users are no longer constrained from reaching a decision about a real estate transaction based only upon locally available information."  ResMan denies the accuracy of the statement and otherwise denies the allegations of Paragraph 23.

24.     This inventive aspect described in the '687 Patent is captured in the claims.  For instance, independent Claim 1 recites "at least one database, coupled to said property management services server, storing real estate property-related data for a plurality of real estate properties." *Id.*, 15:31-33.  Dependent Claim 6, which depends from Claim 1, further recites that "the at least one database comprises a remote database maintained by a party other than a party responsible for said property management services server." *Id.*, 16:12-15.

**ANSWER:**   ResMan admits Claim 1 recites, "at least one database, coupled to said property management services server, storing real estate property-related data for a plurality of real estate properties," and dependent Claim 6, which depends from Claim 1, further recites that "the at least one database comprises a remote database maintained by a party other than a party responsible for said property management services server," but denies the validity of Claims 1 and 6 and otherwise denies the remaining allegations of Paragraph 24.

25.     Similarly, Claim 10 recites "storing property characteristics from an owner for a plurality of owner's real estate properties in an electronic database." *Id.*, 16:41-43.  Dependent Claim 13, which depends from Claim 10, further recites that "said owner property characteristics are stored in a plurality of remote databases maintained by one or more third parties." *Id.*, 17:12-14.

**ANSWER:**   ResMan admits Claim 10 of the '687 Patent recites, "storing property characteristics from an owner for a plurality of owner's real estate properties in an electronic database," and dependent Claim 13, which depends from Claim 10, further recites that "said owner property characteristics are stored in a plurality of remote databases maintained by one or more third parties," but denies the validity of Claims 10 and 13 and otherwise denies the remaining allegations of Paragraph 25.

26.      Claim 17 recites a system for enabling a lease transaction for real property comprising "a plurality of remote databases, coupled to said property management services server, each storing real estate property-related data, including owner property characteristics for a plurality of real estate properties, said remote databases being maintained by one or more third parties[.]" *Id*., 17:44-49.

**ANSWER:**   ResMan admits Claim 17 of the '687 Patent recites, "a plurality of remote databases, coupled to said property management services server, each storing real estate property-related data, including owner property characteristics for a plurality of real estate properties, said remote databases being maintained by one or more third parties," but denies the validity of Claim 17 and otherwise denies the remaining allegations of Paragraph 26.

27.      Another principal object and advantage of the claimed inventions is to solve the technical problems associated with accurately completing lease agreements.  One way that the claimed inventions solve this problem is by utilizing an electronic term sheet to populate a lease agreement.  *See id*., 3:67-4:5.  For instance, in certain embodiments "[t]he term sheet can be activated by the owner to populate its standard form of lease.  Each owner may take the online form for the appropriate property type and amend it via check boxes to include a large number of secondary and proprietary clauses and state-specific language." *Id*., 4:4-8.  "Upon completion of

on-line negotiations, the transaction can be formalized by populating an on-line agreement with the negotiation terms." *Id*., 8:60-63.

**ANSWER:** ResMan admits the '687 Patent asserts that "[t]he term sheet can be activated by the owner to populate its standard form of lease. Each owner may take the online form for the appropriate property type and amend it via check boxes to include a large number of secondary and proprietary clauses and state-specific language," and "[u]pon completion of on-line negotiations, the transaction can be formalized by populating an on-line agreement with the negotiation terms," but denies the accuracy of these statements and otherwise denies the allegations of Paragraph 27.

28.     The capability to allow the owner and tenant to negotiate an electronic term sheet using the inventive system and then populate the lease agreement with the agreed upon terms allows the parties to streamline the entire lease transaction. This aspect of the claimed inventions was not well-understood, routine, or conventional at the time of the invention of the '687 Patent. Rather, as described in the '687 Patent, existing approaches, such as the Web site listing commercial real estate lease opportunities, lacked the tools to support the negotiation and closing of a lease transaction. *See id*., 1:38-45. Moreover, existing approaches relied on hand typing in provisions and information in a lease. In contrast, the approach described and claimed in the '687 Patent enables data to be retrieved from an electronic term sheet and inserted into a lease agreement, advantageously eliminating the need for hand typing in the values and eliminating the risk of transcription error. Indeed, the '687 Patent recognizes that formalizing a transaction by populating an on-line agreement with the negotiation terms "operates to reduce the transaction costs" associated with a real estate transaction. *Id*., 8:60-67.

**ANSWER:** ResMan admits the '687 Patent is generally directed to a commercial lease

transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the allegations of Paragraph 28.

29.     This inventive aspect described in the '687 Patent is captured in the claims.  For example, the "computing system" recited in Claim 1 comprises a "leasing software module" that "populates a lease agreement based on predetermined information from an owner of the selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant." *Id*., 15:26-51.

**ANSWER:**     ResMan admits Claim 1 of the '687 Patent recites, a "computing system" that comprises a "leasing software module" that "populates a lease agreement based on predetermined information from an owner of the selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant," but denies the validity of Claim 1 and otherwise denies the remaining allegations of Paragraph 29.

30.     Similarly, the method of Claim 10 recites the steps of "storing in the electronic database an electronic term sheet negotiated by the owner and the tenant using the software module operating on the property services server," "creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the lease terms of the electronic term sheet into a form lease agreement comprising lease terms and legal provisions," and "publishing the created lease agreement for review by the tenant and the owner." *Id*., 16:54-63.

**ANSWER:**     ResMan admits Claim 10 of the '687 Patent recites the steps of, "storing in

the electronic database an electronic term sheet negotiated by the owner and the tenant using the software module operating on the property services server," "creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the lease terms of the electronic term sheet into a form lease agreement comprising lease terms and legal provisions," and "publishing the created lease agreement for review by the tenant and the owner," but denies the validity of Claim 10 and otherwise denies the remaining allegations of Paragraph 30.

31.     Similarly, the "system for enabling a lease transaction for real property" recited in Claim 17 recites that "said leasing software module stores an electronic term sheet negotiated by an owner of the matching property and the tenant using the leasing software module, and wherein said leasing software module populates a lease agreement based on the owner property characteristics and the negotiated electronic term sheet." *Id.*, 18:7-13.

**ANSWER:**   ResMan admits Claim 17 of the '687 Patent recites a "system for enabling a lease transaction for real property" and that "said leasing software module stores an electronic term sheet negotiated by an owner of the matching property and the tenant using the leasing software module, and wherein said leasing software module populates a lease agreement based on the owner property characteristics and the negotiated electronic term sheet," but denies the validity of Claim 17 and otherwise denies the remaining allegations of Paragraph 31.

32.     Another principal object and advantage of the claimed inventions is to solve the technical problems associated with enabling collaboration between owners, tenants, and other key players involved in the commercial leasing process.  One way the claimed inventions solve this problem is through the use of the property services server platform, which provides a convenient online forum for connecting a variety of property specialists to the potential users of those services.

*See id.*, 5:50-52.  Building owners or their agents can list their available space for rent on a Web site hosted by the property services server platform in a distributed computing environment.  *See id.*, 2:16-18.  Commercial tenants requiring space can either directly enter the property services server platform or enter through allied sites.  *See id.*, 2:19-21.  Real estate brokers employed by tenants can directly access the property services server platform.  *See id.*, 2:21-22.

> **ANSWER:**   ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the allegations of Paragraph 32.

33.     The property services server platform provides commercial tenants and real estate brokers with a search-and-match ability, by which they can search a national space database (e.g., by product type).  *See id.*, 3:19-26.  Tenants and owners can exchange bid-and-ask iterations online through the property services server platform and each party can control its version of the document and delegate authorship rights to their respective professionals and advisors.  *See id.*, 3:57-62.  Upon final mutual approval, the last document will be an electronic term sheet, which can be activated by the owner to populate its standard form of lease.  *See id.*, 3:67-4:5.  Owners can take the online form for the appropriate property type and amend it via check boxes to include a large number of secondary and proprietary clauses and state-specific language.  *See id.*, 4:4-8.  Using the same collaboration software and "ball-in-court" methodology as in arriving at the term sheet, the owner can release the electronic document to its professional advisers, the tenant and the tenant's advisers.  *See id.*, 4:5-12.  Comments, in redline fashion, can be exchanged by the parties in an online environment until final agreement on all terms, conditions, and wording is reached.  *See id.*, 4:12-14.  At that point, the owner can distribute, via the property services server platform,

execution copies of the lease, which the tenant can digitally execute using the property services server platform.  *See id.*, 4:15-20.

**ANSWER:**    ResMan admits the '687 Patent is generally directed to a commercial lease transaction for real property in an on-line computing system, the scope of which is defined by any valid and enforceable claims of the '687 Patent, but otherwise denies the allegations of Paragraph 33.

34.    This aspect of the claimed inventions was not well-understood, routine, or conventional at the time of the invention of the '687 Patent.  To the contrary, the '687 Patent describes that "[c]ommercial leasing transactions are completed today with the support of 'off-line' personal relationships among commercial real estate brokerage firms, property owners, and tenants." *See id.*, 1:25-28.  Although some existing systems provided a Web site that facilitates the matching of a tenant's property requirements with available properties, those systems did not support the negotiation and closing of a lease transaction.  *See id.*, 1:38-45.  Rather, brokers, property owners, and potential tenants move to the "off-line" environment to negotiate and close a typical lease transaction.  *Id.*, 1:45-48.  The '687 Patent recognizes that "[t]his results in an inefficient allocation of resources to complete a lease transaction[.]" *Id.*, 1:49-52.  In contrast, the approach described and claimed in the '687 Patent "enables a user, such as a tenant or owner, to efficiently identify and communicate with a variety of parties associated with the typical evaluation and closing of a real estate transaction." *Id.*, 5:15-19.

**ANSWER:**    ResMan admits the '687 Patent asserts that, "[c]ommercial leasing transactions are completed today with the support of 'off- line' personal relationships among commercial real estate brokerage firms, property owners, and tenants," and "[t]his results in an inefficient allocation of resources to complete a lease transaction[.]"  ResMan further admits the

'687 Patent purportedly "enables a user, such as a tenant or owner, to efficiently identify and communicate with a variety of parties associated with the typical evaluation and closing of a real estate transaction."  ResMan denies the accuracy of these statements and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and, therefore, denies the same.

35.     This inventive aspect described in the '687 Patent is captured in the claims.  For example, the computing system recited in Claim 1 comprises "a property management services server hosting a leasing software module for enabling the lease transaction" and "a plurality of client computers coupled to said property management services server, at least one client computer operable by an owner and at least one client computer operable by a tenant." *Id.*, 15:25-37.  The owner and the tenant "negotiate an electronic term sheet using said leasing software module in support of the lease transaction for the selected real estate property." *Id.*, 15:37-42.  The leasing software module "populates a lease agreement based on predetermined information from an owner of the selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant." *Id.*, 15:45-51.

**ANSWER:**     ResMan admits Claim 1 of the '687 Patent recites, "a property management services server hosting a leasing software module for enabling the lease transaction," "a plurality of client computers coupled to said property management services server, at least one client computer operable by an owner and at least one client computer operable by a tenant," "the owner and the tenant…negotiate an electronic term sheet using said leasing software module in support of the lease transaction for the selected real estate property," and "leasing software module…populates a lease agreement based on predetermined information from an owner of the

23

selected real estate property and information in the electronic term sheet negotiated by the owner and the tenant, and presents the populated lease agreement and the comparables data for approval by the owner and the tenant," but denies the validity of Claim 1 and otherwise denies the remaining allegations of Paragraph 35.

36.      Additionally, dependent Claim 2 (which depends from Claim 1), specifies additional types of client computers that may be coupled to the property management server, including one or more of "a lender client," "a site visit agent client," "a property specialist client," and "a deal agent client." *Id*., 15:52-65.  Dependent Claims 3, 4, and 7-9 recite further details regarding how the tenant and various other types of clients interact with the claimed system.

**ANSWER:**     ResMan admits Claim 2 of the '687 Patent recites, one or more of "a lender client," "a site visit agent client," "a property specialist client," and "a deal agent client,"  but denies the validity of Claim 2.  ResMan also admits Claims 3, 4, and 7-9 recite further details regarding how the tenant and various other types of clients interact with the claimed system. ResMan otherwise denies the remaining allegations of Paragraph 36.

37.      Similarly, Claim 10 recites "defining a tenant's property requirements for leasing a real estate property using a software module operating on a property services server," "identifying with the software module a matching property from one of the owner's real estate properties," "storing in the electronic database an electronic term sheet negotiated by the owner and the tenant using the software module operating on the property services server," "creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the terms of the electronic term sheet into a form lease agreement," and "publishing the created lease agreement for review by the tenant and owner." *Id*., 16:38-63.  Claims that depend from Claim 10 recite further details regarding how the owner and

tenant can collaborate according to the claimed invention.  For instance, dependent Claim 11 recites the steps of "allowing the tenant and the owner to revise the lease agreement via the distributed computer network" and "allowing the tenant and the owner to execute the lease agreement via the distributed computer network." *Id.*, 16:66-17:2.  As another example, dependent Claim 12 recites the steps of "allowing the tenant to make an offer via the distributed computer network to lease the matching owner property," "allowing an owner of the matching owner property to accept the offer via the distributed computer network," and "allowing the tenant and the owner to modify the offer via the distributed computer network."  *Id.*, 17:3-11.

**ANSWER:**   ResMan admits Claim 10 of the '687 Patent recites, "defining a tenant's property requirements for leasing a real estate property using a software module operating on a property services server," "identifying with the software module a matching property from one of the owner's real estate properties," "storing in the electronic database an electronic term sheet negotiated by the owner and the tenant using the software module operating on the property services server," "creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the terms of the electronic term sheet into a form lease agreement," and "publishing the created lease agreement for review by the tenant and owner," but denies the validity of Claim 10.  ResMan also admits Claim 11 of the '687 Patent recites, "allowing the tenant and the owner to revise the lease agreement via the distributed computer network" and "allowing the tenant and the owner to execute the lease agreement via the distributed computer network," but denies the validity of Claim 11.  ResMan further admits Claim 12 of the '687 Patent recites, "allowing the tenant to make an offer via the distributed computer network to lease the matching owner property," "allowing an owner of the matching owner property to accept the offer via the distributed computer network," and "allowing the tenant and

the owner to modify the offer via the distributed computer network," but denies the validity of Claim 12 and otherwise denies the remaining allegations of Paragraph 37.

38.     Similarly, the system for enabling a lease transaction for real property recited in Claim 17 comprises "a property management services server, coupled to a distributed computer network, hosting a leasing software module for enabling the lease transaction." *Id.*, 17:38-40. Moreover, Claim 17 recites "responsive to receiving the tenant's property requirements by the property management services server, said leasing software module accesses the owner property characteristics . . . to identify a matching property . . . wherein said leasing software module stores an electronic term sheet negotiated by an owner of the matching property and the tenant using the leasing software module, and wherein said leasing software module populates a lease agreement based on the owner property characteristics and the negotiated electronic term sheet." *Id.*, 17:51-18:13.  Dependent Claims 18 and 19 (which depend from Claim 10), further recite that the system comprises "a plurality of client computers" and specify the types of client computers that may be coupled to the property management server, respectively.  *Id.*, 18:14-34.  Dependent Claims 20 and 21 recite further details regarding interactions with the system.

**ANSWER:**    ResMan admits Claim 17 of the '687 Patent recites, "a property management services server, coupled to a distributed computer network, hosting a leasing software module for enabling the lease transaction," and "responsive to receiving the tenant's property requirements by the property management services server, said leasing software module accesses the owner property characteristics . . . to identify a matching property . . . wherein said leasing software module stores an electronic term sheet negotiated by an owner of the matching property and the tenant using the leasing software module, and wherein said leasing software module populates a lease agreement based on the owner property characteristics and the negotiated

electronic term sheet," but denies the validity of Claim 17.  ResMan also admits Claims 18 and 19 of the '687 Patent recite, "a plurality of client computers," but denies the validity of Claims 18, 19, and 20, and 21, and otherwise denies the allegations of Paragraph 38.

39.     The approaches described and claimed in the '687 Patent represented a significant advance over the prior approaches that were not well-understood, routine, or conventional in the field at the time the '687 Patent was filed.  Indeed, the novelty and nonobviousness of the claimed systems and method was confirmed during prosecution of the '687 Patent.  As evidenced by the file history of the '687 Patent, the USPTO conducted thorough searches of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art.  On information and belief, during examination of the application that ultimately issued as the '687 Patent, the patent examiner at the USPTO considered at least thirty five U.S. patent documents, as well as twenty other publications.  *See id.*, Code 56.  The USPTO confirmed the patentability of the '687 Patent in a Notice of Allowance dated October 30, 2009, because the claims recited a novel combination of elements not disclosed or suggested in the prior art.

**ANSWER:**     Paragraph 39 includes legal conclusions to which a response is not required. To the extent a response is required, ResMan admits a Notice of Allowance for the application leading to the '687 Patent was mailed on October 30, 2009, but otherwise denies the allegations of Paragraph 39.

**RESMAN'S PRODUCTS AND SERVICES INFRINGE THE '687 PATENT**

40.     ResMan has been and is now directly infringing and/or indirectly infringing the '687 Patent.

**ANSWER:**     Denied.

41.     On information and belief, ResMan provides property managers of multifamily

housing buildings with property management software that includes online lease tools.   On information and belief, since 2000, ResMan makes, uses, sells, and offers for sale in the United States its own products and services that infringe the '687 Patent.  These infringing products and services include, without limitation, ResMan software that includes an online lease management platform.  *See* Exhibit C.

**ANSWER:**     ResMan admits it provides to its customers open and scalable architecture for online leasing experiences, including ResMan Multifamily software to owners, operators, and investors across the multifamily real estate marketplace.  ResMan denies that it infringes any valid and enforceable claim of the '687 Patent and otherwise denies the allegations of Paragraph 41.

42.     ResMan states that it provides a software tool to "automate even the most complex leases without ever opening a spreadsheet" via the ResMan online lease management software.  *See* ResMan, myresman.com, https://myresman.com/ (last visited Feb. 24, 2020).   ResMan advertises that "[w]ith ResMan's online leasing platform, you can streamline and accelerate all leasing activities within an intuitive search-to-align leasing workflow." Ex. C.   Additionally, ResMan states that its software can "Streamline All Aspects of Leasing with a Digital First-approach." Below is a portion of the ResMan website advertising these features:



*ResMan*,  MYRESMAN.COM,  https://myresman.com/solutions/online-lease-management-software/ (last visited Feb. 24, 2020).

**ANSWER:**     ResMan admits it provides a software tool to "automate even the most complex leases without ever opening a spreadsheet."  ResMan further admits that, "[w]ith ResMan's online leasing platform, you can streamline and accelerate all leasing activities within an intuitive search-to-align leasing workflow."  ResMan otherwise denies the allegations of Paragraph 42.

### CLAIMS FOR RELIEF
### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,636,687

### DIRECT INFRINGEMENT

43.     Karya re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-42 of the Complaint as if fully set forth herein.

**ANSWER:**     ResMan incorporates by reference its answers to the paragraphs above as if fully set forth herein.

44.     On information and belief, ResMan directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '687 Patent, including but not limited to Claims 1, 5, 6, 10, 11, 12, 13, and 17.  As an exemplary claim, Claim 10 of the '687 Patent recites:

> A computer-implemented method for conducting a lease transaction  for real estate property in a distributed computer network  environment, comprising the steps of:
>
> storing property characteristics from an owner for a plurality of the  owner's real estate properties in an electronic database;
>
> defining a tenant's property requirements for leasing a real estate property using a software module operating on a property services  server;
>
> identifying with the software module a matching property from one of  the owner's real estate properties, the  matching  property comprising property characteristics from the owner that match the  tenant's property requirements;
>
> publishing with the software module the matching property that matches the tenant's property requirements;

storing in the electronic database an electronic term sheet negotiated by the owner and the tenant using the software module operating on the property services server;

creating a lease agreement for the matching property by populating the property characteristics from the owner for the matching property and the terms of the electronic term sheet into a form lease agreement comprising lease terms and legal provisions; and

publishing the created lease agreement for review by the tenant and the owner.

**ANSWER:** ResMan admits that Claim 10 of the '687 Patent contains the quoted language, however, ResMan denies that it infringes any valid and enforceable claim of the '687 Patent and otherwise denies the allegations of Paragraph 44.

45.     On information and belief, ResMan's online leasing platform provides a method for conducting a lease transaction.   On information and belief, ResMan stores property characteristics from an owner, e.g., Centra Partners, for a plurality of the owner's real estate properties, e.g., Ashley Oaks Apartments, in an electronic database.   On information and belief, ResMan defines a tenant's property requirements, e.g., the number of bedrooms, for leasing a real estate property on a property services server, e.g., the Centra Partners server.   On information and belief, ResMan identifies a matching a property with property characteristics that match the tenant's property requirements.   On information and belief, ResMan stores an electronic term sheet using a software module operated on the property services server.  On information and belief, ResMan further creates a lease agreement for the matching property by populating the property characteristics from the owner and publishes the lease agreement for review.   Exhibit D to this Complaint is a claim chart that includes a more detailed infringement analysis for Claims 1, 5, 6, 10, 11, 12, and 17 of the '687 Patent for ResMan's online leasing management software.

**ANSWER:**   ResMan admits its online leasing platform provides a method for conducting a lease transaction.  ResMan further admits components of its online platform have the functionality to store property characteristics from an owner for a plurality of the owner's real

estate properties in an electronic database, define a tenant's property requirements for leasing a real estate property on a property services server, and create a lease agreement for review.  ResMan further admits Exhibit D is purportedly a claim chart for Clams 1, 5, 6, 10, 11, 12, and 17, but otherwise denies the allegations of Paragraph 45.  Specifically, ResMan denies that the allegations of Paragraph 45 accurately reflect the flow of ResMan's method or the specific details thereof.

46.     In view of the foregoing, ResMan directly infringes the '687 Patent in violation of 35 U.S.C. § 271(a).

**ANSWER:**     Denied.

47.     ResMan possesses knowledge of, and is aware of, the '687 Patent, at least as of the time of filing this lawsuit.

**ANSWER:**     ResMan admits it obtained knowledge of, and is aware of, the '687 Patent due to the filing of this lawsuit, but otherwise denies the allegations of Paragraph 47.

48.     On information and belief, ResMan intends to, and continues to intend to, directly infringe one or more claims of the '687 Patent through the sale of ResMan's software platform.

**ANSWER:**     Denied.

49.     ResMan's acts of infringement have injured and damaged Karya and will continue to injure and damage Karya.

**ANSWER:**     Denied.

50.     As a direct and proximate result of ResMan's acts of infringement, Karya has suffered and continues to suffer damages.  Upon information and belief, ResMan will continue these infringing acts unless enjoined by this Court.

**ANSWER:**     Denied.

## INDIRECT INFRINGEMENT BY INDUCEMENT

51.      Karya re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-50 of the Complaint as if fully set forth herein.

**ANSWER:**    ResMan incorporates by reference its answers to the paragraphs above as if fully set forth herein.

52.      ResMan is liable for inducing infringement of the '687 Patent under 35 U.S.C. § 271(b) by having knowledge of the '687 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '687 Patent, with specific intent, by its customers.

**ANSWER:**    Denied.

53.      Specifically, ResMan actively induces infringement of the '687 Patent by, inter alia, training its customers on the use of ResMan products and services and/or promotion and/or sales of ResMan products and services, including the online leasing management software, to ResMan's customers, including property managers and tenants, for implementing an online lease transaction as claimed in the '687 Patent.

**ANSWER:**    Denied.

54.      ResMan's customers, including property managers and tenants, directly infringe the '687 Patent by using the ResMan software platform including the online leasing management software.

**ANSWER:**    Denied.

55.      For example, ResMan actively induces infringement of the '687 Patent, because ResMan has knowledge that ResMan customers, including property management companies and property residents, use ResMan's infringing products and services in the United States in a manner

that infringes at least Claims 1, 5, 6, 10, 11, 12, 13, and 17 of the '687 Patent, and because ResMan encourages such acts resulting in direct patent infringement, by, inter alia, training, promotion, and/or sales of ResMan products and services to customers for implementing an online lease transaction as claimed in the '687 Patent.

**ANSWER:**   Denied.

56.   ResMan possesses knowledge of, and is aware of, the '687 Patent, at least as of the time of filing this lawsuit.

**ANSWER:**   ResMan admits it obtained knowledge of, and is aware of, the '687 Patent due to the filing of this lawsuit, but otherwise denies the allegations of Paragraph 56.

57.   On information and belief, ResMan intends to, and continues to intend to, indirectly infringe the '687 Patent through inducement of the use of ResMan products and services.

**ANSWER:**   Denied.

58.   On information and belief, ResMan has acted, and continues to act, in an egregious and wanton manner by infringing the '687 Patent.

**ANSWER:**   Denied.

59.   On information and belief, despite knowing that its actions constituted inducement infringement of the '687 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, ResMan nevertheless continued its infringing actions, and continues to make, use, and sell ResMan products and services.

**ANSWER:**   Denied.

60.   ResMan continues to provide ResMan products and services with full knowledge and disregard of the '687 Patent.

**ANSWER:**   ResMan admits that it continues to provide ResMan products and services,

but the remaining allegations of paragraph 60 are denied.

61.     ResMan's acts of induced infringement have injured and damaged Karya and will continue to injure and damage Karya.

**ANSWER:**   Denied.

### INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

62.     Karya re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-61 of the Complaint as if fully set forth herein.

**ANSWER:**   ResMan incorporates by reference its answers to the paragraphs above as if fully set forth herein.

63.     ResMan is liable for contributory infringement of the '687 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale ResMan products and services within the United States because ResMan products and services constitute a material part of the invention embodied in the '687 Patent, which ResMan knows to be especially made and/or especially adapted for use in infringement of the '687 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**   Denied.

64.     ResMan is liable for contributory infringement by having knowledge of the '687 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '687 Patent by its customers, including property management companies and tenants, who use ResMan products and services.

**ANSWER:**   Denied.

65.     Specifically, ResMan contributes to infringement of the '687 Patent by, *inter alia*, promotion, and/or sales of the infringing accused products and services to ResMan's customers,

including property managers and tenants, for their use of online lease transactions as claimed in the '687 Patent.  Those customers directly infringe the '687 Patent by using ResMan.

**ANSWER:**     Denied.

66.     For example, ResMan is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, ResMan customers, including property managers and tenants, to directly infringe the '687 Patent by using ResMan products and services in the United States.

**ANSWER:**     Denied.

67.     ResMan possesses knowledge of, and is aware of, the '687 Patent, at least as of the time of filing this lawsuit.

**ANSWER:**     ResMan admits it obtained knowledge of, and is aware of, the '687 Patent due to the filing of this lawsuit, but otherwise denies the allegations of Paragraph 67.

68.     ResMan continues to provide ResMan products and services with full knowledge and disregard of the '687 Patent.

**ANSWER:**     ResMan admits that it continues to provide products and services, but the remaining allegations of paragraph 68 are denied.

69.     ResMan's past and ongoing infringement of the '687 Patent has and will continue to irreparably harm Karya.

**ANSWER:**     Denied.

70.     ResMan's past and ongoing infringement of the '687 Patent has and will continue to cause Karya damages.  Unless ResMan's acts of infringement are enjoined by this Court, Karya will continue to be damaged and irreparably harmed.

**ANSWER:**     Denied.

71.     On information and belief, Karya and all previous owners of the '687 Patent have complied with marking requirements of 35 U.S.C. § 287.

**ANSWER:**     ResMan lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Karya hereby requests a trial by jury of all issues so triable. Pursuant to Local Rule CV-38, Karya will also submit a separate document styled as a "jury demand."

**ANSWER:**     Plaintiff's jury demand requires no response.  To the extent a response is required, ResMan requests a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

The Complaint for Patent Infringement recites a Prayer for Relief for which no response is required.  To the extent an answer is required, ResMan denies that Plaintiff is entitled to any remedy or relief.

## GENERAL DENIAL

ResMan denies that Plaintiff is entitled to any remedy or relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.     Further answering the Complaint, ResMan alleges the following Defenses and Affirmative Defenses.  ResMan reserves the right to amend its Answer and add additional Defenses and Affirmative Defenses.

## FIRST DEFENSE
### (Non-Infringement)

2.     ResMan does not infringe and has not infringed any valid and enforceable claim of the '687 Patent, either literally or under the doctrine of equivalents, by direct, contributory, or

induced infringement, willfully or otherwise.

### SECOND DEFENSE
### (Invalidity)

3. The claims of the '687 Patent are invalid for failure to satisfy one or more of the conditions and requirements for patentability set forth in 35 U.S.C. §§ 101 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 116, 135, 256, 282, and/or 287, or under the judicially created doctrines of invalidity or unenforceability.

### THIRD DEFENSE
### (No Willful Infringement)

4. ResMan has not and does not willfully infringe any valid and enforceable claim of the '687 Patent.

### FOURTH DEFENSE
### (No Damages)

5. Plaintiff is not entitled to any damages for the purported infringement of the claims of the '687 Patent pursuant to 35 U.S.C. §§ 284 and 287, including, but not limited to, any interest or treble damages.

### FIFTH DEFENSE
### (No Exceptional Case)

6. ResMan's actions in defending this case do not give rise to an exceptional case in Plaintiff's favor under 35 U.S.C. § 285.

### SIXTH DEFENSE
### (Laches, Estoppel, Waiver, Acquiescence, and Unclean Hands)

7. Plaintiff's claims are barred by one or more of the doctrine of laches, estoppel, waiver, acquiescence, and unclean hands from enforcing or claiming damages with respect to any claim of the '687 Patent.

## SEVENTH DEFENSE
### (Doctrine of Equivalents and Prosecution History Estoppel)

8.      Plaintiff's claims are barred under the doctrine of prosecution history estoppel

from asserting any scope of the '687 Patent that would cover the accused products because of

statements and amendments made during prosecution of the application that led to the '687

Patent.

## EIGHTH DEFENSE
### (No Injunctive Relief)

9.      Plaintiff is not entitled to any preliminary and/or permanent equitable relief,

including, but not limited to, a preliminary and/or permanent injunction that enjoins ResMan, its

officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate

corporations, other related business entities, and all other persons acting in concert, participation,

or in privity with them and/or their successors or assigns, from making, using, importing, offering

for sale, or selling the products that purportedly infringe the '687 Patent.

## NINTH DEFENSE
### (No Standing)

10.      Plaintiffs lacks standing to bring this suit.  The assignment, attached as Plaintiff's

Ex. B and found at USPTO Reel/frame No. 052468/0464, is from GE Capital US Holdings, Inc.

to Karya Property Management, a corporation organized under the laws of Texas.  Plaintiff is

Karya Property Management, LLC, which is a limited liability company and not a corporation.

## EXCEPTIONAL CASE

11.      On information and belief, Karya bought the '687 Patent on or about April 15, 2020

and filed suit two weeks later on April 29, 2020 for the purpose of bringing litigation and litigation

cost pressure to bear upon ResMan, which is currently suing Karya in a prior case filed in the

United States District Court for the Eastern District of Texas, Sherman Division on June 3, 2019

(the "Sherman Case").  In the Sherman Case, ResMan is suing Karya for breach of contract, trade secret misappropriation and other claims, and specifically for improperly accessing, disclosing and using some of the same ResMan technology it is now accusing in this case.

12.     On information and belief, Karya and/or its agents selected the '687 Patent on the basis of confidential information that it received from ResMan, both as a customer under contractual confidentiality protections, and in the Sherman Case.  Moreover, given the clear invalidity of the '687 Patent on multiple grounds, including § 101, as discussed above, the '687 Patent should never have been asserted and ResMan is entitled to recover all of its attorneys' fees and costs from Karya under 35. U.S.C. § 285.

## COUNTERCLAIM

1.     Defendant ResMan seeks a declaratory judgment of invalidity of the '687 Patent.

## THE PARTIES

2.     On information and belief, Plaintiff Karya is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 8901 Gaylord Dr., Ste. 100, Houston, TX 77024.

3.     Defendant ResMan is a limited liability company organized under the laws of the State of Utah and is authorized to do business in Texas.  ResMan has a principal place of business at 2901 Dallas Parkway, Suite 200, Plano, TX 75093.

## JURISDICTION AND VENUE

4.     This counterclaim arises under the Declaratory Judgment Act and the Patent Statute of the United States of America, Titles 28 and 35 of the United States Code. This Court has jurisdiction over the subject matter of this actions pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202. This Court has personal jurisdiction over Plaintiff because Plaintiff has submitted

itself to this Court's jurisdiction by filing its Complaint in this Court. Furthermore, Plaintiff has continuous and systematic contacts with the State of Texas, including the fact that it is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Texas. Karya purports to be the owner of the entire right, title and interest in the '687 Patent. Venue in this Court is proper based on the choice of forum by Karya and pursuant to 28 U.S.C. §§ 1391(b), (c). Plaintiff has accused Defendant of infringement of the '687 Patent in this Court, which has created an actual and justiciable controversy between Defendant and Plaintiff with respect to invalidity of the '687 Patent.

**COUNTERCLAIM**
**(Declaratory Judgment of Invalidity)**

5.      The claims of the '687 Patent are void and invalid for failure to comply with the requirements of Title 35, United States Code, including, but not limited to §§ 101, 102, 103, and/or 112 and the rules, regulations, and laws pertaining thereto.

6.      The '687 Patent is invalid as anticipated by U.S. Patent No. 6,594,633 (the "'633 Patent") or as rendered obvious by the '633 Patent, alone or in combination with other prior art references, including those references made of record during the prosecution of the '687 Patent.

7.      In addition, the claims of the '687 Patent are directed to patent ineligible subject matter under 35 U.S.C. § 101.  The '687 Patent claims an abstract idea directed to automation with a computer of common real estate leasing transactions.  The claims of the '687 Patent are not addressed to a technical problem and do not provide any technical improvement.  Indeed, each element of the claims is well understood, routine, and/or conventional, and is accomplished using general purpose computers.

8.      The '687 Patent provides no improvement in the implementation of the common

real estate leasing process on a computer network.  The patentee frames its claimed invention as solving the "need in the art for an on-line solution that addresses the primary tasks completed in a typical lease transaction, including the identification of a property matching a potential tenant's requirements, site visit and space calculations, lease term negotiations, and lease execution." '687 Patent at 1:53-58.  The patentee further admits that "[t]he present invention solves [this] problem by providing a method and system for completing a lease for property in an on-line computing environment."  *Id*. at 1:62-64.  Moreover, the asserted claims recite no more than an automation of conventional leasing activity.

9.      The claims of the '687 patent do not include an inventive concept, let alone the necessary technical concept to be patent eligible under § 101.  The claims outline a conventional search and leasing process and recite the typical interaction between the parties.  Even before the filing of the '687 Patent, there was nothing inventive about searching a database, presenting the search results, computer-to-computer communication, or electronic form generation.

10.     Based on the Complaint, a justiciable and actual controversy now exists between ResMan and Karya concerning the alleged validity of the '687 Patent.  ResMan hereby seeks entry of a declaratory judgment that the claims of the '687 Patent are invalid.

### DEMAND FOR JURY TRIAL

11.     ResMan requests a jury trial on all issues triable by jury.

### PRAYER FOR RELIEF

WHEREFORE, ResMan requests the following relief:

a)      That all claims against ResMan be dismissed with prejudice and that all relief requested by Plaintiff be denied;

b)      That a judgment be entered declaring that ResMan has not infringed and does not

infringe, either directly or indirectly, any valid and enforceable claim of the '687 Patent, either literally or under the doctrine of equivalents;

   c)  That a judgment be entered declaring that the claims of the '687 Patent are invalid and/or unenforceable for failure to comply with the statutory provisions of Title 35 of the United States Code, including without limitation, one or more of sections 101, 102, 103, 111, 112, 116, 135, 256, 282, and 287, or other judicially-created bases for invalidation and unenforceability; and

   d)  That a judgment be entered that this case is exceptional under 35 U.S.C. § 285, and accordingly that ResMan is entitled to recover reasonable attorneys' fees and costs upon prevailing in this action; and that ResMan be awarded such other relief that the Court deems just and equitable, or which the Court deems necessary and proper.

Dated: June 22, 2020      Respectfully submitted,

           PATTERSON + SHERIDAN, LLP


           */s/ John H. Barr, Jr.*
           John H. Barr, Jr.
           Texas Bar No. 00783605
           jbarr@pattersonsheridan.com

           John A. Yates
           Texas Bar No. 24056569
           jyates@pattersonsheridan.com

           Brooks D. Tueting
           Texas Bar No. 24083991
           btueting@pattersonsheridan.com

           Kyrie K. Cameron
           Texas Bar No. 24097450
           kcameron@pattersonsheridan.com

24 Greenway Plaza, Suite 1600
Houston, TX 77046
Phone: (713) 623-4844
Fax: (713) 623-4846

*Counsel for ResMan, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system on June 22, 2020.

*/s/ John H. Barr, Jr.*
John H. Barr, Jr.